UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

|  |  |
|---|---|
| ADAM and LISA BROWN,<br><br>Plaintiffs,<br><br>v.<br><br>FARMERS AUTOMOBILE INSURANCE<br>ASSOCIATION,<br><br>Defendant. | CAUSE NO. 3:18-CV-960 DRL |

OPINION & ORDER

Adam and Lisa Brown acquired an insurance policy from Farmers Automobile Insurance Association. In 2017, a fire damaged their house. Although Farmers has paid the Browns over $1,200,000 on claims related to the fire damage, the Browns say they are entitled to more for repairs to the dwelling and continued living expenses. The Browns also contend that Farmers has handled their claims in bad faith. Farmers filed a summary judgment motion on the contract and bad faith claims. The court grants summary judgment on the bad faith claim only.

BACKGROUND

The Browns' insurance policy with Farmers was effective from May 8, 2017 to May 8, 2018. After a fire damaged their home during this time, the Browns reported the loss to Farmers and made claims for damage to the dwelling, damage to personal property, and additional living expenses.[1]

Adam Brown prepared and submitted an initial estimate of $1,832,875.54 to Farmers for the cost of the home (ECF 53-5, Ex. D-1 at 76). The Browns later submitted a sworn statement to Farmers, attesting that the estimated cost of repairing the dwelling was $823,031.07 (ECF 53-5, Ex. D-2). Farmers accepted this latter estimate and paid the Browns what it believed was the actual cash

---

[1] The Browns and Farmers settled the personal property damage claim, so it isn't at issue here.

value (less depreciation), calculated to be $743,073.61 (ECF 53-4 at 40; ECF 53-5, Ex. D-3). The Browns argue here that Farmers still owes them the depreciation cost. The Browns also dispute the estimate from their prior sworn statement, arguing that the cost to repair the dwelling actually exceeds $1,800,000 (ECF 53-4 at 51-52).

Farmers paid for the Browns' living expenses after the fire until the company sensed that something was off. Immediately after the fire, the Browns stayed in a hotel for 21 days, and Farmers paid for their stay (at a cost of $12,412.47) (ECF 53-7 at 27-28). Then, on November 8, 2017, the Browns moved to a house located on Tabor Hill Court, Granger, Indiana (*Id.* at 29). Farmers paid their $4,000 rent each month (*Id.* at 35). Because the house was unfurnished, Farmers also agreed to pay $6,073.64 per month for the Browns to rent furniture from Aaron's Furniture (*Id.* at 32, 36). The Browns paid Aaron's Furniture directly each month, and Farmers reimbursed them (*Id.* at 32).

On March 16, 2018, the Browns sent Farmers a lease for a new property located on Ash Road, Granger, Indiana (*Id.* at 60). The lease was between Adam and Lisa Brown as tenants and B12 Investments, LLC as landlord (ECF 53-5, Ex. D-6). B12 is owned by Adam Brown, his sons, daughter, and mother-in-law (ECF 53-4 at 24-25). The rent was to be $8,100 per month with a $8,100 deposit (*Id.* at 85). Farmers paid the $8,100 deposit and the $8,100 rent from April 2018 through October 2018 (*Id.* at 85-87; ECF 53-8 at 34-35). Farmers also continued to pay the Browns for the $6,073.64 furniture rental cost each month during that same time frame, though the Browns had returned all of the furniture to Aaron's by March 29, 2018 (ECF 53-8 at 56). Around that point, B12 Investments bought furniture and the Browns instead rented furniture from B12 (ECF 53-4 at 92).

On October 2, 2018, Farmers learned that the Browns never leased or moved into the Ash Road property (ECF 53-8 at 37). Instead, the Browns moved from Tabor Hill Court to a house on Elmsford Court in Granger and then to a house on Sandpiper Lane in Elkhart. (ECF 53-4 at 29-34). On November 2, 2018, Farmers denied all further liability on the Browns' insurance claims because

the Browns allegedly violated the concealment/fraud provision of the policy by submitting a "false lease" to Farmers and by collecting payments for furniture when the Browns had returned the furniture to Aaron's by March 2018. In December 2018, Farmers received a third-party contractor bid from Belfor, which estimated the total replacement cost of the dwelling to be $905,707.97 (ECF 53-8 at 31). Farmers didn't do anything based on this new estimate because it had already sent the denial of coverage letter to the Browns (*Id.* at 32).

On November 27, 2018, the Browns filed their complaint, arguing that Farmers hadn't paid them all the fire loss for the dwelling or all their living expenses and that Farmers hadn't acted in good faith in handling their claims. Farmers moved for summary judgment on all claims, and its motion is now ripe for review.

## STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court must construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor is the court "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a

trial." *Id.* The court must grant a summary judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dept. of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

DISCUSSION

The court (sitting in diversity) applies Indiana law here. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938); *Ruiz v. Blentech Corp.,* 89 F.3d 320, 323 (7th Cir. 1996). Under Indiana law, interpretation of insurance policy is a question of law to be decided by the court. *See Nat'l Fire & Cas. Co. v. West ex rel. Norris*, 107 F.3d 531, 534-35 (7th Cir. 1997) (citations omitted). The insured has the burden of proving coverage, though the insurer bears the burden of demonstrating that an exclusion applies. *Id.* at 535. Insurance policies are subject to the same rules of interpretation as other contracts in Indiana. *Id.* Words are given their plain and ordinary meaning. *Id.*

A. *The Court Denies Summary Judgment on Farmers' Defense under the Concealment or Fraud Provision.*

On November 2, 2018, Farmers sent the Browns a notice denying further coverage because of alleged violations of the policy's prohibition against concealment or fraud. The provision excludes coverage if, before or after a loss, the Browns "[i]ntentionally concealed or misrepresented any material fact or circumstance," "[e]ngaged in fraudulent conduct," or "[m]ade false statements" relating to their insurance. Farmers predicated its denial on what it viewed as false claims for rent and rental furniture at the Ash Road home, never then used. Under an insurance fraud provision, "false statements as to material matters willfully made by the insured in proofs of loss with the intention of thereby deceiving the insurer will preclude any recovery on the policy by the insured." *Tenore v. Am. & Foreign Ins. Co. of N.Y.*, 256 F.2d 791, 795 (7th Cir. 1958).

Under the first exclusion, Farmers must show that the Browns intentionally concealed or mispresented any material fact or circumstance. Courts have explained the meaning of materiality in this context of claims submission—"whether the misrepresentation had a significant impact on the insurer's decision-making process." *Insuremax Ins. Co. v. Bice*, 879 N.E.2d 1187, 1191 (Ind. Ct. App.

2008); *G&S Metal Consultants, Inc. v. Continental Cas. Co.*, 200 F. Supp.3d 760, 766 (N.D. Ind. 2016). Put another way, a court will ask whether the insured's misrepresentations caused the insurer to take a substantially different position in responding to the potential liability. *Insuremax*, 879 N.E.2d at 1191-92. "[S]ummary judgment is almost never appropriate whe[n] the claim requires a showing that the defendant acted with criminal intent or fraudulent intent." *Klinker v. First Merchants Bank, N.A.*, 964 N.E.2d 190, 195 (Ind. 2012).

Farmers first contends that the Browns' submission of the allegedly false lease for the Ash Road property violated this provision. On that front, genuine triable issues remain. In his affidavit, Mr. Brown states that the "Ash Road Lease was made because at the time we believed that we were going to move into the Ash Road property first and then rent from B12 Investments. This did not happen as the deal fell through, but my family desperately needed new accommodations because the Tabor Hill property in which we lived had flooded to the degree of making it unlivable" (ECF 57-3 ¶ 6). The "deal" was for B12 to acquire the property and the Browns then to lease it. The circumstances that caused the packaged deal to fall through (such that B12 never ultimately owned the property as planned and the Browns never then leased it), and Mr. Brown's expression of his family's intention to lease the Ash Road property until that happened create a genuine issue of material fact under this policy exclusion. A jury might still reasonably find that the Browns had intentionally concealed a material fact, but one reasonably might not.

Farmers presses that the Browns intentionally concealed a material fact because they never leased the property, never moved into the property, and never paid rent to B12 Investments. That the Browns never leased the property or paid rent to B12 for that property is true, but Farmers hasn't established that a reasonable juror could find only that the Browns intended to conceal these facts or that these facts were material—that they "had a significant impact on the insurer's decision-making process." *Insuremax*, 879 N.E.2d at 1191. According to Farmers, there wasn't a coverage problem if

the Browns later provided documentation that supported the expenses (ECF 57-2 at 83; ECF 53-7 at 42). Farmers sent the Browns $8,100 each month for rent. Mr. Brown testified that he continued to make rental payments in the amount of $8,100, albeit for Elmsford Court and Sandpiper Lane in lieu of Ash Road (ECF 53-4 at 72). Accordingly, a reasonable jury could find that where the rent was paid was immaterial, particularly when Farmers concedes that it would have continued to make the same payments so long as the Browns had documentation of their ongoing rental expenses.[2]

Farmers next contends that the claims for furniture rental violated the concealment or fraud provision. Farmers paid the Browns $6,073.64 each month to rent furniture from Aaron's Furniture, starting in November 2017 and through October 2018. The Browns returned some furniture on January 5, 2018; and, by March 29, 2018, the Browns had returned all of it. Just thirteen days before (March 16), the Browns had insisted that Farmers continue to pay for the furniture rental. Farmers says the Browns never informed the company that they had returned the furniture and stopped that rental. The Browns seem to concede that point, arguing instead that they never continued to tell Farmers that they were leasing furniture from Aaron's Furniture. Whether they affirmatively misrepresented a fact does little to answer whether they intentionally concealed a material fact, and a reasonable jury could conclude that the Browns did so by accepting payments for some six months without using these payments for their intended reason. At the same time, a reasonable jury could conclude that the Browns merely accepted these payments because the money was thereafter being

---

[2] This conclusion becomes more certain still when one appreciates that these rental payments weren't intended as dollar-for-dollar reimbursements but were based on fair market value. For instance, Mr. Brown explained that these payments weren't for rent *per se* but for the fair market value needed to house his family in any one location (ECF 53-4 at 82). Brian Hay, one of Farmers' claims adjusters, also said that the fair living expenses were for "fair rental value," which is established in a case-by-case manner based on the number of people and the type of home the insured had prior to the loss (ECF 53-8 at 19-20). Because the Browns applied these rental payments to their subsequent homes at Elmsford Court and Sandpiper Lane, the court isn't satisfied that the allegedly false lease significantly affected Farmers' decision-making process. *See also Insuremax*, 879 N.E.2d at 1191 ("materiality of the representation or omission is a question of fact to be resolved by the factfinder unless the evidence is such that there can be no reasonable difference of opinion").

devoted to furniture that they were now renting from B12 rather than Aaron's Furniture. At worst, that the Browns didn't tell Farmers that they had returned the furniture could suggest fraudulent intent, but that is "the province of a jury to evaluate" here. *See G&S Metal*, 200 F. Supp.3d at 768.

Further to the point of intentionality, and also now to the point of materiality, the Browns claim that they continued to rent furniture during this time (albeit from B12 rather than Aaron's Furniture). Farmers only relied upon the initial invoice for furniture and never requested any additional invoices or proof from the Browns, nor did the Browns volunteer any. Farmers simply continued to pay the Browns the cost to rent furniture. One might expect a certain level of honesty or transparency from the Browns; but, if the Browns were continuing to rent furniture on this record, the jury must wrestle with the question whether there was any intention to conceal a fact and whether that fact was indeed material. The record seems not to show a differential in expense. Even so, Farmers concedes that the additional living expenses were for "fair rental value" (ECF 53-8 at 19). Nothing on this record demonstrates that the insurer would have paid something less or done something different. When asked what would happen if the Browns changed furniture rental companies, a Farmers representative testified, "I don't know. We'd have to look into that" (ECF 53-7 at 49). A reasonable jury could thus find that the Browns' decision to change furniture rental companies and not to disclose that fact to Farmers was immaterial—that it had no significant impact on the insurer's decisionmaking. *See Insuremax*, 879 N.E.2d at 1191.

Because genuine triable issues remain on these questions of intentionality and materiality, the court denies summary judgment on this concealment or fraud defense. Farmers otherwise establishes no undisputed evidence of false statements or intentional concealment on this record.

B.   *The Court Denies Summary Judgment on Farmers' Claim that the Browns are Barred from Recovering Depreciation for the Dwelling.*

The Browns sued Farmers for breach of contract because Farmers has allegedly refused to pay them for all the fire loss to their home. In its summary judgment motion, Farmers argues that the

7

Browns are barred from recovering the depreciation cost for the home—a narrow form of damage in this case. To support its position, Farmers cites Section C(2)(d), the loss settlement provision of the policy, that provides that the insurer "will pay no more than the actual cash value of the damage until actual repair or replacement is complete."

It seems undisputed that actual repair or replacement of the dwelling has not occurred. In fact, the Browns point out that they haven't been able to rebuild the home because Farmers hasn't paid enough to permit that. Farmers invites the court to assume that the proviso of Section C(2)(d) won't be met—that the Browns won't replace their home or have no intention of doing so—but the company cites no evidence to support that position here. That alone precludes summary judgment on this record. The court cannot be assured that "actual cash value" is the only damage question, or one so easily parsed from this case.

In addition, Farmers offers no definition of "actual cash value" to exclude depreciation cost. The policy never defines that concept. Section C(2) of the loss settlement provision covers replacement cost "without reduction for depreciation" subject to certain conditions. One such condition is that the insurer will pay only "actual cash value" until the actual repair or replacement is complete. Reading these sections of the policy together, the court might conceive of an argument in which "actual cash value" necessarily excludes depreciation cost, else these two provisions together might make little sense. *See FLM, LLC v. Cincinnati Ins. Co.*, 973 N.E.2d 1167, 1174 (Ind. Ct. App. 2012) ("A court should construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless."). But Farmers hasn't made this argument, and it's not the court's job to develop one. *See Gross v. Town of Cicero*, 619 F.3d 697, 704 (7th Cir. 2010) (quoting *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002)).

This isn't a casual concern. This circuit has observed that "actual cash value" is found in many property insurance policies, but frequent litigation stems from the failure of insurance companies to

define the phrase. *See Throne v. Member Select Ins. Co.*, 882 F.3d 642, 646 (7th Cir. 2018) (interpreting Indiana law). Often the generally accepted meaning of "actual cash value" is replacement cost less depreciation, though Indiana has adopted a broad evidence rule as a default position to interpret the phrase when the insurer has not defined it. *See id.* (finding the phrase ambiguous). This rule permits the parties to introduce evidence that would logically tend to form a correct estimate of the loss. *See id.*; *see also Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349, 355-57 (Ind. 1982). Farmers has not cited or argued this law (neither party has in truth); nor has Farmers demonstrated that only one interpretation of "actual cash value" prevails as a matter of law, explained why any resulting ambiguity should not be construed against it, or designated evidence to construe the phrase properly under Indiana's broad evidence rule, much less unilaterally in the manner Farmers invites. This too precludes summary judgment.

The Browns, in response, also contest the total replacement cost of the dwelling. In its summary judgment motion, however, Farmers has not requested that the court declare the total replacement cost to be correct. This issue is not before the court then, and it would be better resolved by a jury given the discrepancy between the Browns' sworn statement of loss and conflicting deposition testimony from Mr. Brown, as well as the third-party contractor bid from Belfor, which estimated the total replacement cost to be somewhere in between what Farmers and the Browns are respectively claiming. For any number of reasons here then, genuine issues remain for trial.

C.    *The Court Denies Summary Judgment on the Argument that Farmers Has Paid All Additional Living Expenses.*

The Browns also sued Farmers for breach of contract because Farmers allegedly failed to pay them for all additional living expenses they have incurred and will incur as a result of the dwelling being uninhabitable. On this issue, the insurance policy provides:

**1.** Additional Living Expense

If a loss covered under Section 1 makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

(ECF 53-1 at 8).

Farmers says it no longer owes the Browns additional living expenses because the time to make repairs has passed; and, in the alternative, because the Browns have permanently relocated to the house on Sandpiper Lane in Elkhart. Though it has been over three years since the fire, whether the shortest time required to make repairs has passed is a question better left for the jury. The court cannot answer this question without weighing the evidence. That is particularly true when a triable issue remains on whether the Browns have received sufficient funds from Farmers to replace the dwelling. This is bolstered by the Belfor estimate from December 2018, which indicated that the cost to repair or replace the home was more than what Farmers had already given to the Browns.

As to the issue of whether the Browns have settled elsewhere, Mr. Brown has testified that the "Sandpiper ho[m]e in which we currently live is a temporary residence and we do not intend to remain her[e] as our goal has always been to rebuild the home we lost. We did not purchase the home, we lease it from B12 Investments." (ECF 57 at 3; ECF 57-3 ¶ 5). There remains then a factual question for a reasonable jury to decide whether the Browns have permanently relocated, as Farmers contends, or whether they haven't, as the Browns contend. Such a factual question precludes summary judgment.

D. *The Court Grants Summary Judgment in Favor of Farmers on the Bad Faith Claim.*

Finally, the Browns sued Farmers for breaching their obligation to deal in good faith with the Browns in investigating, adjusting, and otherwise handling their claim resulting from the fire loss. Farmers spent the last three pages of their brief arguing why the Browns haven't met their burden to

show that Farmers has acted in bad faith. In response, the Browns articulate no defense to these arguments. Because of that, the Browns have abandoned the claim, and the court grants summary judgment in favor of Farmers. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008).

Even if the Browns had not abandoned this claim, summary judgment would still be appropriate for Farmers. In Indiana, there is a legal duty implied in all insurance contracts that the insurer deal in good faith with the insured. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993). An insurer breaches this duty by denying a claim when it knows there is no rational, principled basis for doing so. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002). Proof of bad faith exists when there is clear and convincing evidence that the insurer knew that there was no legitimate basis for denying liability. *Id.* (citation omitted). An insurer breaches his duty of good faith only when the plaintiff can prove conscious wrongdoing, a state of mind reflecting "dishonest purpose, moral obliquity, furtive design or ill will." *Colley v. Ind. Farmers Mut. Ins. Grp.,* 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998). The record supports no such conclusion by a reasonable jury here.

### CONCLUSION

Construing all facts and reasonable inferences in favor of Adam and Lisa Brown, the court holds that triable issues remain as to Farmers' fraud defense and the Browns' breach of contract claims. The court GRANTS summary judgment on the bad faith claim only and DENIES summary judgment on all other claims.

SO ORDERED.

February 11, 2021                                  *s/ Damon R. Leichty*
                                                   Judge, United States District Court